Good morning, Your Honors. Steve Bruchetto for the Plaintiff Robert Boggs. I would like to reserve time for rebuttal. The issues in there are two issues raised on appeal. One is qualified immunity. The second relates to the dismissal of a one of the defendants. I'm going to focus my comments primarily on qualified immunity. I'm certainly happy to answer any questions regarding the second issue. On qualified immunity, the district court erred in dismissing Plaintiff's case as a dismissal case in granting summary judgment for two reasons. Number one, the district court's opinion is in conflict with two decisions of this Court, the Ulrich case and the Campanelli v. Bockrath case, regarding what constitutes a temporal nexus of a stigmatizing statement sufficient to create, satisfy one of the elements of a liberty interest due process claim. And second, the district court's opinion is inconsistent with this Court's holding in Cox v. Ross-Skelly. For both of those reasons, the district court's opinion should be reversed. Early this case has had a quite lengthy procedural process. It was before this Court on an interlocutory appeal of the district court's order denying qualified immunity earlier, and that interlocutory appeal was reversed and came back down to the district court. Prior to the interlocutory appeal, the magistrate judge had issued findings and recommendations denying all defendants' motions for to dismiss and for summary judgment on qualified immunity grounds. That initial finding and recommendation was correct. Subsequent to the interlocutory appeal, the magistrate judge and the reviewing district court judge reversed that of Tibbetts v. Kulangowski, and that decision was incorrect. The elements of this case are the same. Ginsburg. If you look at Tibbetts, if you look at Tibbetts and you look at the facts of this case, pretty hard not to say that Tibbetts probably would control it. I disagree, Your Honor. The Campanelli and the law was clearly established. I disagree, Your Honor. Campanelli and Ulrich both concern, they hold, that stigmatizing statements made in the course of termination satisfy the third element of the Stigma Plus test. They hold that some temporal, that there is a requirement for a temporal nexus, and there must be some temporal nexus sufficient to make the statement stigmatizing in the eye of the public. There is not a specific kind of temporal nexus required. The temporal nexus test in this case is satisfied because these documents with the stigmatizing statements were made in the course of termination. Thus, under Campanelli and Ulrich, the law is clear. You have to also conclude that they were disclosed. You may have to. The way I understand your argument is you get around Tibbetts, basically, by relying on Cox. Again, I don't agree. I believe the issues of the facts in Tibbetts involved statements that were not in the course of termination. They were separate from the termination process after the termination. Well, these statements here were the statements of issue here was a written statement. Correct. A written investigative report. Correct. Which they rely upon to terminate. Or, yeah, I guess to terminate him. Fair. Termination, loose, but yes. They confront him and say, you either resign or we're firing you. Correct. And he resigns. It's effective 30 days later. Correct. Right? Yes. So it's not published. It literally is not published beyond the inner circle until, what was it, 19? There's various competing timeframes, but it's about 19 days. The newspaper article is May 31st. Right. When termination was is uncertain. Minimum about 19 or 20 days. Somewhere between 4 months and 19 days. According to the district court. So it seems under Tibbets that if that's all there is, the law is probably not clearly established on the question of temporal nexus, but it's a written report that is utilized. And if it's a public document, if it satisfies the elements of the public records like under Cox, then it seems to me that it was when they generated the report as a personnel document, then within the meaning of Cox, it was a – it was disclosed. It was publicly available, as in Cox. And that's what meets the temporal requirement here. I agree, and that's our second point on qualified immunity, that Cox disposes of Tibbets. Well, but now – So now – okay. So let's go to Cox. I'm just trying to understand your argument. But how does Cox dispose of the argument when it's not controlling law as to the Oregon statute? And if you're looking in a qualified immunity context, it could be that some court will look at Cox, will do a comprehensive analysis of Washington v. Oregon public inclusion. But as of the date we're looking at, we've got a ruling on Washington law, but not on Oregon law. So why is Cox controlling clear law? Cox is controlling clear law because we have submitted evidence, and as well as precedent from the Oregon Supreme Court, that the documents in Boggs' case were not – were public records available on demand. I mean, it's as simple as that. And that's what the holding of Cox is. If they're public records available on demand, they – it's published on the date the document is created. I mean, that's the holding. So from a statute limitations point of view, if the document is created, it's stuck in the file. And is that, in your view, when a statute would begin to run, in terms of any claim he might have? It would satisfy all of the elements of the – of a due process liberty interest claim, and setting aside issues of equitable tolling, accrual, it would be sufficient to start the running of the statute. Okay. So let's say they – he resigns, this sort of handshake resignation. They take the piece of paper, they stick it in the file, nothing happens, there's no newspaper gets it. Twenty years later, ten years later, five years later, the newspaper then gets a hold of it, public records, and now it's public, so to speak. Would he have a claim? Barring some equitable tolling issue, he would – his claim would be – have expired. One fact I would add in this case that makes it a little bit different is that, for example, in this case, the evidence was Mr. Boggs never saw the document, never knew what was in the document until it was published in the newspaper. So you could have those kinds of facts that would alter the statute of limitations. But barring those kind of facts, the statute would begin to run once the document is created and put, you know, into the public record. So if – if Cox isn't controlling, if the law is uncertain with respect to Oregon law, at least as of that moment, then why aren't you back in Tibbetts' land? Well, I'll set – I'll set aside the issue of whether Oregon law is established because I would like to address that a little bit further. But the reason I'm not in Tibbetts' land is that I believe that Tibbetts' controls simply statements that are separate from the termination process, not employer statements made in the course of termination. There really would be no reason that the individuals looking at this document I mean, the ultimate question is, the individuals who were looking at this document and made the decision to release, would a reasonably competent official know that the document – the statements are closely related to termination? The answer is yes. I mean, they're part of the termination process. They have some temporal relation. They're stigmatizing. Reasonably competent public officials said, ah. Do you think – the statements here are in – I think in my mind when I look at this, it seems a little bit different, but the statements are in writing. I mean, suppose you just met with him. Yes. And said orally, you know, we've got all this information, and, you know, I'm going to tell you. I agree that that would be a difference, and that is the facts presented by one of their cases, Dugan, I believe is the case, where they verbally tell the guy reasons for termination, and then some period of time, many, many, perhaps even years later, one of the terminating officials appears on a radio show and says similar things. Those statements are separate from the termination process. It makes a difference that this is a document developed in the termination process. It's in writing. It is in response to a newspaper request for documents related to discipline or dismissal. It is described by the newspaper as a document, you know, created, you know, and recommending his immediate dismissal. No competent public official could clue to anything other than that it's closely related to termination. Even the district court in ruling – magistrate judge in ruling on the findings and recommendations initially said the newspaper article about Boggs reported on statements that had been made concurrently with and caused his termination. In other words, the post-termination statements were pre-termination statements published at a later time. There can be no question that they related to his termination. You know, there isn't any doubt. There were no statements made in the course of termination involved in Tibbets. That is why the case does not control. All of the statements in Tibbets, and all of the cases Tibbets relies upon, Martz, Hadley, Wray, all of the cases cited in their briefs, Dugan, Hamilton, they're all statements that are separate from the termination process. That's what the whole line of cases is about. If you look at the law at the time these public officials made this decision, they should have known of Campanelli, Ulrich. They should have known of Cox. No competent official. Sotomayor, could I just ask you, I just want to make sure I understand. Sure. The procedural posture and the fact that there are two separate cases, really. Yes. There's Boggs 1, which deals with the DA in the county, right? Yes. And that's in the district court on hold. That's not correct. One of the things I meant to notify you of, but didn't do it before today, is that is in the court of appeals. It is now a related case in this court. In this court? Yes. So did the district court knock that out on summary judgment? It did. In favor of the county? It did, and the DA. And the DA. On the merits or on the quality? Well, on the merits. There was no -- on the merits and on qualified immunity. So there are crossover issues. Okay. So this case only deals with the officials, the DAs who work with the DA and county or what are they called? County counsel. County counsel. Right. And an employee in the DA's office. DA's office. Correct. The district court didn't look at any of the merits-related issues with respect to those individuals. Not in the -- no. Not in this case. That's correct. So are those individuals in the other case on the merits as well? There's only one individual in the other case. It's the DA, Mr. Schrunk, and the county. Oh, the county as an entity. Correct. So there are substantive issues on the merits. There are custom policy and practice issues. And there are qualified immunity issues. And the status of that case is that the opening brief will be filed within a couple of weeks. I see that I'm using my time on rebuttal. Thank you. Thank you. May it please the Court, counsel, I'm Erin Lageson. On behalf of the state defendants, and I'll be dividing my time with Ms. Moore, who represents the county defendants in this case. I'll say briefly about the other case, which will, your brief is due next week in this court. And with respect to the DA, what the district court did in the first case is originally the court had dismissed the DA for lack of personal participation. In light of the case that's now in front of you, the district court reconsidered that ruling and went ahead and ruled on whether the district attorney was entitled to qualified immunity on the liberty interest claim, taking into account the fact that the district attorney in this case had said he was responsible for the employment decision and for denying any name-clearing hearing. So he got qualified immunity. Yes, he did. And the county got out on what policy? I'm not sure. I'll let Ms. Moore address that. He got qualified immunity. Yes, he did. The question in this case, viewing the facts in the light most favorable to plaintiffs, is whether reasonable officials would have known that publishing the stigmatizing statements in the investigation report 19 or 20 days after plaintiff's attempt to rescind his resignation was denied without providing name-clearing hearing violated his clearly established rights. And Tibbets is controlling on that. Tibbets said that within the time period that's relevant to these defendants in this case, that reasonable officials would not have known that if there was a 19-day gap between an adverse employment decision and the publication of any stigmatizing statements, that they would not know that they had to provide a name-clearing hearing under clearly established law. So I believe that Tibbets is dispositive. And the only real question here is, is this a Cox case? Is Cox somehow to the contrary? And I think there's really three reasons that Cox does not defeat a claim of qualified immunity in this case, even if this court were ultimately to apply a Cox-type rule in this case. And the first is, Cox really hinged on the placement of the stigmatizing documents in the personnel file of the plaintiff. And we don't have allegations or evidence here that this investigation report was actually placed in a personnel file. Ginsburg. At the end of the opinion in Cox, they just make it clear that that document was a public document. They do, but again, in terms of looking at Cox as would it have alerted reasonable officials of their obligations here, I read the opinion as focusing pretty intensely on the question of, was this document placed in the personnel file? And I think the reason for that is the personnel file is typically what's transferred to other employers. And so the concern is that if there's stigmatizing information in that file ---- It's just that I think I was reading one of the, one of the, one of the, I guess Oregon Supreme Court cases, I guess it was Rice or ---- Price. When it was, when they're talking about what is it, what is it, what's the definition of a personnel file? It's just a collection of related documents. And I'm not sure that that's, you know, Price said that, you know, I think it stands for the proposition that if there's no, you know, adverse disciplinary action, then documents are disclosable. I don't think I necessarily read it as defining personnel files. I'm not sure that Cox can be sort of disposed of or distinguished just on the grounds that there's statements in the opinion about it was placed in the personnel file. And so that's why I think there's other reasons why ---- Other reasons. Why, why, why, why Cox doesn't defeat these defendants' qualified immunity. And for one, it's not clear how it applies to these defendants. These defendants' role in the process was responding to public records requests. And the evidence in the record is that District Attorney Shrunk is the one that made the employment decisions. And his affidavit says that he's the one that made ---- Doesn't it go more to the merits than to the qualified immunity? I mean, there may be internal ---- And that's what I found interesting here. There may be ---- this is up on summary detail. On the merits, what ---- it looks like the D.A. was involved. On the merits, it does look like the D.A. was involved, and that's being litigated in the other case, which is coming to you soon. In terms of, I think, looking at these defendants' roles, his claim is these defendants had an obligation to provide a name-clearing hearing before releasing these documents. And if these defendants are trying to figure out what their obligations ---- But for purposes of qualified immunity, we take the facts in light most favorable to the nonmoving part, to the plain fear. Correct. So ---- And those facts are still his allegations still implicate these defendants. These are claims about what were these defendants supposed to do? Did these defendants violate his ---- Well, he alleged they were involved together. You know, he makes the reference that the county counsel advised them and the D.A. What was the allegations with respect to the D.A.s that they investigated? And then the employee was the one who actually released the documents. And I guess when I read the complaint, I read the allegations against these defendants as being what they had some obligation on their own part to provide him with notice and give him a hearing before they released the documents. And I certainly don't think Cox clearly makes ---- established it for these defendants' purposes that they had that obligation. The question with respect to what it establishes for Mr. Schrunk is, of course, at issue in the other case. And finally, if it does apply, it wouldn't defeat qualified immunity because it's really not clear what rule of law emerges from the application of Cox to these facts. For example, when is the name-clearing hearing supposed to happen? Do defendants, these defendants responding to a public records request, have to provide a name-clearing hearing any time there's some stigmatizing information that's going to be released, even if the information is being released long after an employment decision? That's contrary to the holdings in the Supreme Court cases, that there has to be a publication in connection with the employment action. Or is it instead of ---- Ginsburg. That's the temporal ----  But their suggestion is, well, it's close enough in time, although there's a dispute as to how you calculate that time. It is. And again, my only point here is it's really not clear what these defendants were supposed to do. Is the rule of law that plaintiff is asking for, is it that a name-clearing hearing has to be provided whenever we create a stigmatizing public record that may at some point be disclosed? I mean, that gets kind of far afield from the idea that it has to actually be published to have any sort of reputational injury effect on the plaintiff. Well, I mean, Cox certainly doesn't ---- well, maybe not. I don't know if ---- I don't know that we have a case that actually says it, it must be actual publication. Well, I think there has to be the publication ---- Well, Cox just deals with the fact of it was a public document. I think Cox says that placement in the personnel file, if it's a public record, constitutes publication for persons of the Paul v. Davis-type claim. That said, it's getting a little bit farther away from actual publication. Publication has to occur in order for the defamation to occur, and that's an essential element of the claim. And that's where you get into this odd thing about Cox. If you put ---- if the mere existence of it in the file makes it a public document, even though nobody's asked for it, it's kind of a philosophical question. Is that the public ---- does the publication occur at that moment, the moment it's placed in the file? No, exactly. It's a very murky area, and when you're looking at the case for qualified immunity purposes, the question is, would Cox have alerted these defendants that they had an obligation to provide plaintiff with a name-clearing hearing? Under Oregon law, was it ---- was this a public document? At the point it was released, it was. At the point when ---- How about when ---- how about when Schrum had the document in his hands? It was generated, and here's the document, here's the report. Not ---- according to our public records manual, which I believe plaintiff cites in his brief, in sort of preliminary stages before you know what's really going to happen with an employee, disciplinary action or personnel action, it's not a public record at that point in time because you don't know. He meets with Boggs, says, ah, we've got the goods on you, you know. You either resign or we're going to fire you. Boggs says, I'll resign and I'll sign the statement. And he does. He resigns. Public document under Oregon law? Not at that ---- Price? Not ---- I don't believe so in light of the fact that he attempted to rescind his resignation. That doesn't come until a month later. So I think under Price, once there ---- once it became ---- yes, it would be a public document at that moment in time, but then it became less clear later when he attempted to rescind his resignation that it was no longer a public document, which, again, emphasizes the law was really not clearly established when these defendants in this case were ---- He responded to him when he did that. He did that as part of his tort claims request, right? He did. He tried to rescind. No, he did that. I thought it was written in the ---- I understood when I was reading the factual background and whatnot that when he filed his tort claim or in conjunction with his tort claim, he attempted to rescind. He attempted to rescind his resignation in February of 2007. I don't recall if that same letter was a tort claim notice. For some reason, I think it was, but I may be wrong. I'll allow the ---- give the rest of the time to Ms. Moore. Moore. Good morning, Your Honor. Your Honors, I'm Jenny Moore, and I represent the county defendants, and that's Soule, Short, and Stewart. And to make clear here, Soule and Short are attorneys who work for the county attorney's office, which is separate from the district attorney's office. They have separate chains of command. They have separate duties. Soule and Short have no employment relationship whatsoever to Mr. Boggs. In fact, in Plaintiff's complaint, he alleges that his employer was, in fact, the medical examiner. So we have two attorneys who have no employment relationship. We also have Stewart. She's an administrative employee who works in the district attorney's office. She also has ---- she's not above Boggs in the chain of command and has no employer-employee relationship with Mr. Boggs. And so even if we pull this case up to a 300-foot view looking down, it's the county's position that none of these defendants had the ability to deprive Mr. Boggs of a due process hearing for his deprivation. Kennedy, it goes to the merits, right? Well, it goes to the merits, but it goes to the actual constitutional deprivation. You know, did a deprivation occur? That's the merits. Sure. And so that's one of the arguments. But we're only here the only reason we can be here on appeal at this point is that we're here on our qualified immunity. So these arguments were made below, but when we're talking about qualified immunity, I think it goes to qualified immunity, too. Is it clearly established that a non-employer would know, reasonably know, that they should provide a name-clearing hearing to a non-employee, right? And so those arguments were wound into the proceedings down below. Under the qualified immunity analysis, one of the first questions is, do they ---- taking all the allegations as true, do they allege a constitutional claim? And I guess you could say that these allegations don't show, they're insufficient to show that these individuals had anything to do with the alleged constitutional violation. But that goes to sort of the merits of the claim. And it does go to the merits, but I think it also speaks to the position that these employees were in when we're looking at the Liberty Interest Claim. I mean, in order to do ---- when we're looking at qualified immunity, what we really zeroed in on are the subjects which counsel have already addressed, which is this proximity in time. And I think to clarify to the Court, I clarify that the report, the investigation at issue, that was written and written down on the 12th of December, 2006, okay? Even if we view all the facts and the like most favorable to the plaintiff, the meeting with Schrunk doesn't happen until January 5th, 2007, okay? So that's a span of 18 days, okay? It is the county's position that it is not clearly established in the Ninth Circuit that a span even of 18 days is sufficient to establish a temporal proximity sufficient to implicate a liberty interest. And we can look at Cox, which, Your Honor, as you point out, that's Washington law. And it is far from clearly established that Oregon law mandates the disclosure of any personnel records. That's what the Washington law says. Oregon law doesn't say that. Oregon law has many exemptions to public records. In fact, every record that's created in the course of business at Multnomah County is a public record. The question is, is it subject to an exemption? And here, there's evidence in the record that the law says it's subject to an exemption. Robertson, there were no exemptions in the Washington statute? Well, it said if it's placed in the ---- my understanding of that is if it's placed in the personnel file, then it is a mandatory disclosure. And Oregon law is different. We have exemptions. We say all records are public records. Do we know if we were to look at Washington's law, if there are any exemptions in Washington law? I don't know that. I don't know that. Well, they do have some they do have some exemptions in Washington law. Right. I'm sure they do. My understanding through reading Cox and when I looked at it previously was that if records are put into the personnel file, then it's a mandatory disclosure. And that's the Oregon Supreme Court's decision in Rice made it pretty clear that where there was the personnel action had to be final and complete. And so here, he resigns. He resigns on January 5th. He signs the resignation. But it's not final until he doesn't his resignation isn't actually final until February. And it's interestingly, on February 5th, which is his final day of resignation, that's the day that a tort claim notice is sent. And you're correct, Your Honor, that on that day, it's a tort claim notice and an attempted resignation or rescinding the resignation. So, you know, these timelines in this case His attempt to withdraw is rejected. They say, no, you can't. Well, it's not specifically rejected. And, in fact, the evidence in the record shows that the D.A. The D.A. considered the matter unsettled up until the time that the lawsuit in this case What was he fired or did he resign? Well, they considered it a resignation at that point. Right. Right. But then he attempted to rescind the resignation. So the point being, when we talk about is it clearly established that this record, the investigation report, was mandated for disclosure, it was far from clearly established. And, in fact, when the public records request came in, which wasn't until sometime later, the actual disclosure didn't happen until after the lawsuit was filed. And we have reference in the briefing that's You sort of both sides have themselves coming and going on the dates, okay? So the first date is, you know, when is this final? It could be in December or it could be as late as I believe his argument is May 11th. So that's one end. And then superimposed on that is, but when was it published? Well, was it published when it was created or was it published and it became a final document when he's actually terminated? And that depends on who you, you know, which side you look to. And then you have the We do know it was actually published in the newspaper. That's probably the only thing that you all agree on. On May 31, there was a newspaper report. And that's correct, Your Honor. And the fluidity of these dates, which has been a moving target throughout this litigation, is due to the fact that the complaint itself is deficient in alleging when there was publication and when this record was a record, a public record that was available upon demand. The complaint doesn't say that. The date that we have in the complaint is the March 30, 2007 date when the records were actually publicly disclosed. And, Your Honors, I would point you to Bishop v. Wood, which is a U.S. Supreme Court case that says that making a document public is actually necessary for the public disclosure, and public disclosure is the first prong of the three-prong test for a liberty interest claim to implicate the liberty interest. And so, notwithstanding Cox, I think that we need to look to Bishop to say that, you know, when was there an actual public publication. And I will note that not even Plaintiff knew the content of that report until he read it in the newspaper. And we can look at that, the excerpt of record at 65. He has an affidavit which says that's the first time he learned of it. So both Boggs and the public first learned of these allegations in March, which is several months after his termination. Ginsburg. Do you think it makes any difference, you know, that in Cox, you were dealing with a written document, as opposed to, as I was, my question, suppose they had just met and said, orally said all these things? Well, I think that that's where what they're trying to get to is it's clearly established that if comments are not made publicly, then there can be no defamation. And so I think what Plaintiff is attempting to do is by saying, by having it written and by having the possibility that it was. But I'm talking about Cox. Right. And that's Cox says, Cox talks about public records which are mandated for disclosure. And these records under Oregon law were far from mandated from disclosure. It was an open issue, which is why those documents weren't produced immediately upon request by the Oregonian and other news agencies. And we have citations to that from Deputy District Attorney Hoover, who said, I thought it was an open question at that point and didn't release them until the lawsuit was filed, where it was clear at that point Mr. Boggs was saying I was constructively discharged. Underlying my question was this notion that all this information is contained in the document. And there's never really a chance for the employee to refute it. Well, there's no need to refute it unless he's been publicly disparaged.  Unless it's publicly available. What's that? Unless it's publicly available as a matter of public law, public disclosure acts. Well, and it was made publicly available in March of 2007. All right. Thank you, Your Honor. Thank you. A couple of quick rejoinders. In terms of the facts, the — there was a tort claim notice that was sent on February 5th or February 7th, I believe, which was the date the resignation was to be effective. The tort claim notice informed the county and the DA that — that false stigmatizing statements had already been published and that Mr. Boggs had not been provided a due process hearing. So they knew that. It asked for reinstatement, and it revoked the resignation. There was a definitive decision by the county, and that was Ms. Short wrote a letter rejecting the request for resignation on February 17th, 10 days after the tort claim notice. That is also in the record. Hoover testified that the document was a public record because it was — because Boggs had resigned, and the attempt to revoke left it uncertain whether or not Boggs was going to be reinstated and dismissed. He had public records requests. He didn't respond until he — he learned that — that the — Boggs had been, in fact, terminated. And he concluded that when he learned the lawsuit had been filed. He did not know up until that time that Short and the county had rejected the request to revoke. With respect to the issue of publication — Ginsburg. Would you just clarify for me, what is your position on the earliest that this information was public? My position on when the earliest of this — the information was public is January 5th. That's the day he met with. That's the day he met with. With the DA. With the men in. Yes. With the DA. Yeah. And it — as counsel for DOJ concedes, it is clear that when an employee resigns under Oregon law, it is not a formal disciplinary action. The record is a public record. It was published that date. You can't undo the publication. And finally, you know, the holding at Cox, as this Court knows, Cox is a qualified immunity case. It is not on the merits. And the holding in Cox is that an employer cannot release stigmatizing statements without providing notice and an opportunity for a hearing. Setting a — You sued these defendants. I still don't understand. Why did I sue these defendants? How much do you want me to get into tactics? Well, I just — they weren't involved in the decision to fire this client. Some of them were. Short was involved in the employment decision to fire the cleric — the person who's called the clerical individual, Stewart, was involved in the decision. There isn't testimony whether — Is she concurring the decision? She actually wrote the — She discussed whether they should fire him or not? She wrote the investigation report with the stigmatizing conclusions, presented it to Schrunk for his approval. I mean, she wrote it from scratch, or did she summarize or put together the documents? You know, to be actually — to be precisely accurate, I don't know I can give you a lot of detail. She, together with another individual for the county, a Mr. Younger, conducted an investigation and wrote the report. They went back and forth on the report. She put the — you know, I don't know who's responsible specifically for the statements that he's dishonest and — And the State — the State defendants? Why are they in this case? The — Hoover, Bradley, and French, there isn't — French and Bradley are high up. You know, they are, you know, prosecutors in the DA's office. They are Schrunk's right-hand men. So they get sued? So they get sued? They get sued because they're his right-hand men? I can't tell — no. I can't tell you affirmatively whether they were involved in the substantive employment decision, because that hasn't been gone into on depositions. I think it likely because of their position. They were sued because we had specific evidence that they were involved in the decision to release the records. And they certainly knew that these records were involved in the termination of Boggs. That's why. Thank you. Thank you. Thank all counsel for your argument. The case just argued. Boggs v. Hoover is submitted.
judges: Alarcon, McKeown, Paez